UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JACOB MOLIERI and SNAKEOUT, INC.,

                Plaintiffs,

      v.

CHARLTON H. BONHAM, in his official capacity as Director of the California Department of Fish and Wildlife,

                Defendant.

No. 2:25-cv-02832-JAM-CSK

**ORDER GRANTING MOTION TO DISMISS**

Plaintiffs Jacob Molieri and SnakeOut, Inc. challenge regulations promulgated by the California Fish and Game Commission, alleging they are unconstitutional and impede the operation of their business.  The Director of the California Department of Fish and Wildlife, Defendant Charlton H. Bonham, moves to dismiss two of Plaintiffs' claims, arguing Plaintiffs insufficiently plead their First Amendment and Fourteenth Amendment Equal Protection causes of action.  As discussed further below, the Court grants dismissal of those claims with leave to amend.  The Court also grants Defendant's unopposed request for judicial notice.

1

## I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Plaintiff Jacob Molieri trains dogs to recognize and avoid venomous rattlesnakes native to and prevalent across Northern California through his small business, Plaintiff SnakeOut, Inc. ("SnakeOut").  Compl. ¶¶ 1, 15–18, ECF No. 1.  During the training sessions, dogs are exposed to live rattlesnakes in a controlled environment, allowing them to learn essential avoidance behaviors for when they encounter a rattlesnake in a real-world setting.  Id. ¶ 20.

Plaintiffs allege their business is threatened by the California Department of Fish and Wildlife's ("CDFW") regulatory scheme, which is detailed below.  Id. ¶ 3.  In particular, CDFW has informed SnakeOut that it can legally conduct its aversion training classes only if it complies with one of two conditions: (a) it offers the classes for free, or (b) it uses non-native or albino rattlesnakes, citing California Code of Regulations title 14, section 43.  Id. ¶ 22.  Molieri alleges that neither is a viable option for SnakeOut, as SnakeOut must charge a fee to stay in business and cannot safely or effectively use non-native or albino snakes.  Id. ¶¶ 22-23.

Because Plaintiffs want to use native, non-albino rattlesnakes, they applied for a Scientific Collecting Permit ("SCP") governing the use of native wildlife for scientific, educational, or propagation purposes.  Id. ¶ 24.  However, the challenged regulations prohibit the commercialization of native species possessed under an SCP.  Id.  Plaintiffs allege their "aversion training classes are plainly educational in nature, as they instruct dogs and their owners on how to avoid a significant

2

public safety risk." Id. ¶ 25. However, CDFW takes the position that because SnakeOut charges a fee for its classes, the service constitutes prohibited commercialization, even though businesses, universities, and other entities that possess an SCP similarly collect fees to attend or participate in their activities. Id.

Further, the challenged regulations establish a mandatory, non-discretionary timeline for processing SCP applications. Id. ¶ 27. CDFW must determine whether an application is complete within forty calendar days from the date the application fee clears payment, and, once an application is deemed complete, CDFW must either approve or deny the permit within the next sixty calendar days. Id. (citing Cal. Code Regs. tit. 14, § 650(e)(3)). Despite this clear timeline, CDFW has yet to render a decision on Plaintiffs' SCP application, filed on October 27, 2023. Id. ¶¶ 26, 28. Plaintiffs allege this "delay has left SnakeOut in a state of regulatory limbo, unable to obtain the necessary authorization to conduct any business under an SCP." Id. ¶ 29.

Plaintiffs' Complaint contains three causes of action for (1) Violation of Due Process under the Fourteenth Amendment; (2) Violation of Equal Protection under the Fourteenth Amendment; and (3) Violation of Freedom of Speech under the First Amendment against Defendant Charlton H. Bonham, the Director of CDFW at the time. Id. ¶¶ 31-48. Since the filing of this action, Bonham has stepped down from his position as CDFW Director and Valerie Termini is currently the acting Director. As such, Termini has been automatically substituted as the Defendant pursuant to Federal Rule of Civil Procedure 25(d).

Before the Court is Defendant's Motion to Dismiss Plaintiffs' Second and Third Causes of Action and unopposed Request for Judicial Notice.  See Mem. P. & A. Supp. Def.'s Mot. Dismiss ("Mot."), ECF No. 11-1; Req. Judicial Notice ("RJN"), ECF No. 11-2.  This matter is fully briefed and was submitted without oral argument under Local Rule 230(g).  See Pls.' Opp'n Def.'s Mot. Dismiss ("Opp'n"), ECF No. 15; Def.'s Reply ("Reply"), ECF No. 16; ECF No. 17.

## II.   STATUTORY AND REGULATORY BACKGROUND

California Fish and Game Code section 5061 authorizes the California Fish and Game Commission ("Commission") to "establish rules and regulations for the commercial take, sale, transport, export, or import of native reptiles."  Cal. Fish & Game Code § 5061.  Pursuant to that authority, the Commission promulgated Chapter 5 of Title 14 of the California Code of Regulations, including section 40, which provides:

> General Prohibition[:] It is unlawful to capture, collect, intentionally kill or injure, possess, purchase, propagate, sell, transport, import or export any native reptile or amphibian, or part thereof, except as provided in this chapter, Chapter 2 of this subdivision relating to sportfishing and frogging, sections 650, 670.7, or 783 of these regulations, or as otherwise provided in the Fish and Game Code or these regulations.

Cal. Code Regs. tit. 14, § 40(a).  The regulations further provide that:

> Propagation and Possession for Commercial Purposes.  Native reptiles may not be sold, possessed, transported, exported or propagated for commercial purposes, except as provided in sections 40(f) and 42 and except as follows:
>
> (1) Species and subspecies Authorized.

4

> Pursuant to the provisions of this section, only the following species and subspecies may be sold, possessed, transported, imported, exported or propagated for commercial purposes:
>
> > (A) California kingsnake (Lampropeltis californiae);
> >
> > (B) California subspecies of the gophersnake (Pituophis catenifer): Great Basin gophersnake (Pituophis catenifer deserticola), Pacific gophersnake (Pituophis catenifer catenifer), San Diego gophersnake (Pituophis catenifer annectens), and Sonoran gophersnake (Pituophis catenifer affinis);
> >
> > (C) Northern three-lined boa (Lichanura orcutii).

Cal. Code Regs. tit. 14, § 43(c). Together, these two regulations generally prohibit commercial activities involving native reptiles,[1] including native rattlesnakes, subject to limited and specific exceptions.

### III. LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). The court assumes all factual allegations are true and "construe[s] them in the light most favorable to the nonmoving party." Parks Sch. of Bus., Inc. v. Symington, 51 F.3d

---

[1] The term "native reptiles" is defined as "those subspecies, and species, including all color phases, of the classes Reptilia and Amphibia indigenous to California." Cal. Code Regs. tit. 14, § 1.67. This definition "includes all specimens regardless of their origin even if they were produced in captivity." Id.

5

1480, 1484 (9th Cir. 1995) (citing Everest & Jennings, Inc. v. Am. Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir. 1994)). That said, if the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). However, this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. Iqbal, 556 U.S. at 678. In the same vein, conclusory or "formulaic recitation[s] of elements" do not alone suffice. Id. (internal quotations and citations removed). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

**IV.  OPINION**

As a threshold matter, Defendant asks the Court to take judicial notice of several publicly available records of the Commission documenting their purpose in promulgating the regulations. See RJN at 1-4. Plaintiffs do not oppose. Thus, the Court will take judicial notice of these records. See Fed. R. Evid. 201; Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir. 2007) (a court "may take judicial notice of 'matters of public record,' . . . as long as the facts noticed are not 'subject to reasonable dispute'" (quoting Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001)).

6

Turning to Defendant's motion, Defendant targets Plaintiffs' Second and Third Causes of Action brought under the Equal Protection Clause and First Amendment.  The Parties disagree about the standard of review applicable to the Court's analysis of each claim, with Defendant arguing each is subject to rational basis review, and Plaintiffs contending each is subject to strict or intermediate scrutiny.  The level of scrutiny applicable to Plaintiffs' Equal Protection claim turns on the Court's classification of Plaintiffs' First Amendment claim.  Thus, the Court addresses Plaintiffs' First Amendment Cause of Action first.

A.   Plaintiffs Fail to Plausibly Plead a First Amendment Claim

Defendant moves to dismiss Plaintiffs' Third Cause of Action, arguing that the regulations do not target speech, nor have an inevitable effect on speech, such that Plaintiffs have no viable First Amendment claim.  Mot. at 10-13.  Even if they did, Defendant argues the regulations easily withstand the applicable standard of review, intermediate scrutiny.  Id. at 13-14.  In opposition, Plaintiffs argue the challenged restrictions are subject to, and fail to satisfy, strict scrutiny as they restrict conduct with a significant expressive element.  Opp'n at 8-11.  In the alternative, Plaintiffs argue that the regulations fail under intermediate scrutiny if they are deemed to have an incidental effect on speech.  Id. at 10-12.

The Court agrees with Defendant and finds Plaintiffs have failed to plausibly allege a First Amendment violation here.  "The First  Amendment,  applied  to  states  through  the  Fourteenth

Amendment, prohibits laws abridging the freedom of speech." Animal Legal Def. Fund. v. Wasden, 878 F.3d 1184, 1193 (9th Cir. 2018) (internal quotation marks omitted).  The starting point of the Court's analysis therefore is whether the challenged regulations present a restriction on speech.  Courts apply three levels of scrutiny to laws that affect First Amendment rights - rational basis, intermediate scrutiny, and strict scrutiny.  Retail Digit. Network, LLC v. Prieto, 861 F.3d 839, 847 (9th Cir. 2017). Regulations of First Amendment-protected speech are subject to strict or intermediate scrutiny depending on whether the regulation is content-based or content-neutral.  Mitchell v. Newsom, 509 F. Supp. 3d 1195, 1200 (C.D. Cal. 2020).  But "restrictions on protected expression are distinct from restrictions on economic activity or, more generally, on nonexpressive conduct."  Sorrell v. IMS Health Inc., 564 U.S. 552, 567 (2011).  And "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech."  Id.  Thus, courts apply rational basis review to "non-speech regulations of commerce and non-expressive conduct."  Mitchell, 509 F. Supp. 3d at 1200 (quoting Prieto, 861 F.3d at 847).

A statute or regulation directed at conduct only triggers heightened scrutiny if it (1) restricts "conduct with a 'significant expressive element,'" or (2) has the "inevitable effect of 'singling out those engaged in expressive activity.'" B&L Prods., Inc. v. Newsom, 104 F.4th 108, 113 (9th Cir. 2024) (quoting Int'l Franchise Ass'n v. City of Seattle, 803 F.3d 389, 408 (9th Cir. 2015)).  In making this determination, "[a] court may consider the 'inevitable effect of a statute on its face,' as

8

well as a statute's 'stated purpose.'" HomeAway.com, Inc. v. City of Santa Monica, 918 F.3d 676, 685 (9th Cir. 2019) (quoting Sorrell, 564 U.S. at 565). "[A]bsent narrow circumstances, a court may not conduct an inquiry into legislative purpose or motive beyond what is stated within the statute itself." Id.

It is undisputed that the First Amendment protects vocational training, including "the right to teach and 'impart a specific skill and communicate advice derived from specialized knowledge.'" Opp'n at 8; Hubbard v. City of San Diego, 139 F.4th 843 (9th Cir. 2025); Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer, 961 F.3d 1062 (9th Cir. 2020). Here, Plaintiffs allege that SnakeOut's aversion training services involve the "communication of specialized knowledge and skills to both dogs and their owners," speech which is "neither misleading nor potentially misleading" and "is protected by the First Amendment." Compl. ¶ 44. Plaintiffs claim the challenged regulations prohibit them from charging a fee when using native rattlesnakes for this training and are therefore "a content- and speaker-based burden on this protected speech." Id. ¶¶ 45, 48.

However, the relevant inquiry is whether the regulations restrict conduct on their face or are specifically targeted at such conduct. See Reply at 5; see also B&L Prods., 104 F.4th at 113-114 (statute did not implicate the First Amendment where "[o]n its face, the language solely regulates the moment at which a binding contract is formally consummated"); HomeAway.com, 918 F.3d at 685 (ordinance did not implicate the First Amendment where it did not "target" expressive conduct and the effect of the ordinance "on its face" was to regulate nonexpressive

conduct).  The Court agrees with Defendant that "the challenged regulations do not on their face restrict or prohibit rattlesnake aversion training, nor do they otherwise target such conduct." Reply at 5.  Indeed, the challenged regulations prohibit only the sale, possession, transporting, or propagating of native reptiles for commercial purposes, and apply generally apply to all such conduct without regard to whether speech is involved or the nature of such speech.  See Cal. Code Regs. tit 14, § 43(c). None of these prohibited acts — that is, selling, possessing, transporting, or propagating native reptiles for commercial purposes — has any "significant expressive element."  Rather, such commercial conduct falls within the category of business-related activity that the Ninth Circuit has consistently held does not involve any "expressive element" implicating the First Amendment.  See, e.g., B&L Prods., 104 F.4th at 113-114 (sales of firearms are not entitled to First Amendment protection because "consummating a business transaction" is not conduct with a significant expressive element); HomeAway.com, 918 F.3d at 685 (booking unlawful rentals does not implicate the First Amendment because such "business dealings" consist only of nonspeech, non-expressive conduct).

The challenged regulations here do not on their face restrict or prohibit rattlesnake aversion training, nor do they otherwise target such conduct.  Accordingly, they are not subject to First Amendment scrutiny on this basis.  Cf., e.g., Hubbard, 139 F.4th at 850 (holding that an ordinance explicitly targeting and preventing the teaching of yoga, an expressive activity, in shoreline parks and beaches plainly implicated plaintiffs' First

10

Amendment right to speak); <u>Kirchmeyer</u>, 961 F.3d at 1069 (holding that a statute restricting the types of students a private vocational school could enroll "squarely" implicated the First Amendment by "regulat[ing] what kind of educational programs different institutions can offer to different students").

The only other way the First Amendment might be implicated here is if the challenged regulations had the inevitable effect of singling out those engaged in expressive activity. <u>See</u> Mot. at 13-14; Opp'n at 10; Reply at 5-6. However, Plaintiffs have failed to allege the regulations are limited in their application to those who conduct rattlesnake aversion training or any other activity that might arguably be characterized as "expressive" in nature. <u>Cf.</u>, <u>e.g.</u>, <u>Minneapolis Star & Trib. Co. v. Minn. Comm'r of Revenue</u>, 460 U.S. 575, 592 (1983) (striking down tax imposed on the sale of large quantities of newsprint and ink because the tax had the effect of singling out newspapers to shoulder its burden). As the Ninth Circuit has observed, it cannot be said that a regulation has the effect of "singling out" those involved in expressive activity where "the impact of the [regulation] does not differ based on whether a party is engaged in such [expressive] activity." <u>B&L Prods.</u>, 104 F.4th at 115-16.

As Plaintiffs have failed to sufficiently allege the regulations implicate the First Amendment, the Court grants Defendant's Motion to Dismiss Plaintiffs' Third Cause of Action.

B.   <u>Plaintiffs Fail to Plausibly Plead an Equal Protection</u>
     <u>Claim</u>

Defendant also moves to dismiss Plaintiffs' Second Cause of Action, arguing the regulations are not subject to strict

scrutiny as Plaintiffs have neither plausibly pled a burden on free speech nor unequal treatment as required for an Equal Protection claim. Mot. at 4-10. Defendant further argues the challenged regulations easily withstand rational basis review given California's important interest in protecting native wildlife, justifying dismissal. Id. at 5-9. Plaintiffs, on the other hand, argue the regulatory scheme at issue burdens the exercise of a fundamental right, free speech vis-à-vis vocational training, and is therefore subject to strict scrutiny. Opp'n at 4-6. Plaintiffs also counter, in the alternative, that they have sufficiently alleged an Equal Protection claim even if rational basis scrutiny is applied, and have adequately pled a "class of one" claim. Id. at 6-8.

The Court agrees with Defendant and finds that Plaintiffs have failed to adequately plead an Equal Protection claim, including because the Complaint does not include sufficient facts to overcome the regulatory scheme's "strong presumption of validity" under rational basis review. See F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 314 (1993). The Equal Protection Clause of the Fourteenth Amendment commands that "all persons similarly situated should be treated alike," City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985), and forbids the government from "treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). An Equal Protection analysis begins "by determining the proper level of scrutiny to apply for review." Honolulu Wkly., Inc. v. Harris, 298 F.3d 1037, 1047 (9th Cir. 2002). Strict scrutiny applies when the statute, regulation, or ordinance

"targets a suspect class or burdens the exercise of a fundamental right," id. (quoting United States v. Hancock, 231 F.3d 557, 565 (9th Cir. 2000)) and requires a court to ask whether the regulation is narrowly tailored to serve a compelling governmental interest.  Id.  If the governmental action does not concern a suspect or semi-suspect class or a fundamental right, courts apply rational basis review and simply ask whether the ordinance "is rationally-related to a legitimate governmental interest."  Id. (quoting Ball v. Massanari, 254 F.3d 817, 823 (9th Cir. 2001)); see also Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psych., 228 F.3d 1043, 1050 (9th Cir. 2000) ("To withstand Fourteenth Amendment scrutiny, a statute is required to bear only a rational relationship to a legitimate state interest, unless it makes a suspect classification or implicates a fundamental right." (citations omitted)).

Plaintiffs first argue that the regulations are subject to strict scrutiny because they violate Plaintiffs' fundamental right to engage in educational instruction.  Opp'n at 5. However, as held supra, Plaintiffs have inadequately alleged that the regulations infringe on their First Amendment rights.  Thus, strict scrutiny does not apply.

Plaintiffs also argue that, even if rational basis scrutiny applies, they have sufficiently stated an Equal Protection claim because the regulations are not rationally related to a legitimate governmental interest.  Opp'n at 6.  In particular, Plaintiffs argue that CDFW does not need to ban SnakeOut from charging fees for its training in order to further California's

interest in protecting native wildlife from commercial exploitation and population reduction as teaching for money does not present a special concern that teaching for free does not present.  Id. at 6-7.  However, as summarized by Defendant, rational basis review presumes constitutionality and asks whether the law is "rationally related to a legitimate state interest." Nat'l Ass'n for Advancement of Psychoanalysis, 228 F.3d at 1050 (quoting City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976) (quotations omitted)).  Under this "highly deferential standard," a "statutory classification must be upheld so long as 'there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'"  Solorio v. Lynch, 194 F. Supp. 3d 1038, 1044 (E.D. Cal. 2016) (quoting F.C.C., 508 U.S. at 313).  "To consider whether the law is actually effective in achieving its stated goals would require us to second guess a legitimate 'legislative choice' and engage in 'courtroom fact-finding.'  The Equal Protection Clause does not give us license to do so."  Olson v. California, 104 F.4th 66, 80 (9th Cir. 2024) (internal citations omitted).

Here, it is well-established that "the protection of wildlife is one of the state's most important interests."  Pac. Nw. Venison Producers v. Smitch, 20 F.3d 1008, 1013 (9th Cir. 1994).  The Commission purportedly enacted the regulations in order to "protect native wildlife, including native rattlesnakes, from commercial exploitation and potential population reduction." Mot. at 7-8; see also Kiene Decl., Exs. A-D, ECF Nos. 11-4, 11-5, 11-6, 11-7 (records of the Commission documenting their purpose in promulgating the regulations).  Plaintiffs do not plausibly

allege that the regulations, which generally prohibit commercial activities involving native reptiles, are not rationally related to that purpose merely because they could be less restrictive in their application.  See Nordlinger, 505 U.S. at 11 ("In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification[.]").

Finally, Plaintiffs argue that they have sufficiently pled a "class of one" claim, which requires Plaintiffs to allege facts showing that they have been "'[1] intentionally [2] treated differently from others similarly situated and that [3] there is no rational basis for the difference in treatment.'" SmileDirectClub, LLC v. Tippins, 31 F.4th 1110, 1122–23 (9th Cir. 2022) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 562 (2000) (per curiam)).  Here, Plaintiffs allege that "businesses, universities, and other entities" have been issued SCPs even though they purportedly charge fees for their services.  Compl. ¶¶ 25, 41.  However, a class-of-one plaintiff "must be similarly situated to the proposed comparator in all material respects." SmileDirectClub, 31 F.4th at 1123.  Plaintiffs here have failed to allege facts establishing that they were treated differently from other entities similarly situated to Plaintiffs "in all material respects," as they have not alleged any other entities provide the same or similar training services that Plaintiffs do, nor that the other entities were authorized to charge fees for such services.

Thus, the Court grants dismissal of Plaintiffs' Second Cause of Action.

///

C. <u>The Court Denies Leave to Amend</u>

In granting a motion to dismiss, a court must also decide whether to grant leave to amend.  Leave to amend should be freely given where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . ."  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Eminence Cap., LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003).  Here, Plaintiffs have neither requested leave to amend nor demonstrated that they might be able to maintain these two claims if allowed to amend their Complaint. The Court finds that legal issues predominate the instant motion to dismiss and further amendment is futile. Defendant's motion to dismiss is granted without leave to amend.

**V.   ORDER**

For the reasons above, Defendant's Motion to Dismiss (ECF No. 11) is GRANTED.  Plaintiffs' Second and Third Causes of Action are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: April 27, 2026

_____
JOHN A. MENDEZ,
SENIOR UNITED STATES DISTRICT JUDGE

16